# 23-1065

## United States Court of Appeals
## for the Second Circuit

JOSEPH CORSINI,

*Plaintiff-Appellant,*

*against*

CITY OF NEW YORK,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Eastern District of New York

**BRIEF FOR APPELLEE**

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel
of the City of New York*
Attorney for Appellee
100 Church Street
New York, New York 10007
212-356-0820 or -2490
akarlin@law.nyc.gov

RICHARD DEARING
JAMISON DAVIES
ANTONELLA KARLIN
  *of Counsel*

October 31, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................iii

PRELIMINARY STATEMENT ................................................................. 1

ISSUES PRESENTED FOR REVIEW ...................................................... 3

STATEMENT OF THE CASE ................................................................... 3

    A.  The process for issuance and adjudication of violations of
the City's Construction Code ....................................................... 3

    B.  The issuance and adjudication of notices of violations to
Corsini for building an unpermitted and dangerous roof
structure........................................................................................ 6

        1. OATH's January 2017 decisions, sustaining violations
for the unpermitted structure and Corsini's subsequent
failure to correct ...................................................................... 6

        2. OATH's March and November 2017 decisions,
sustaining additional violations for failing to correct
the unpermitted structure .................................................... 10

    C.  The district court's dismissal of Corsini's action, brought
more than three years after the December 2016 notices of
violation...................................................................................... 11

SUMMARY OF ARGUMENT ................................................................. 14

ARGUMENT ........................................................................................... 16

POINT I ................................................................................................... 16

    THE STATUTE OF LIMITATIONS BARS CORSINI'S DUE
PROCESS CLAIM BASED ON THE DENIAL OF REVIEW
OF THE DECEMBER 2016 VIOLATIONS................................... 16

i

# TABLE OF CONTENTS (cont'd)

**Page**

A. Corsini's claim accrued in December 2016 or, at the latest, in February 2017, outside the limitations period. ........ 16

B. Corsini's arguments on appeal misunderstand the Supreme Court's decision in *Reed v. Goertz.* ............................ 20

POINT II ................................................................................................ 27

CORSINI'S DUE PROCESS CLAIM CHALLENGING THE CITY'S REQUIREMENT THAT HE PAY THE FEES IMPOSED BY THE HEARING OFFICER TO APPEAL FAILS TO STATE A CLAIM ........................................................ 27

CONCLUSION ...................................................................................... 32

CERTIFICATE OF COMPLIANCE ...................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adsani v. Miller,*
139 F.3d 67 (2d Cir. 1998) ................................................................. 30

*Augustin v. Nassau County Sheriff's Dep't,*
783 F.3d 414 (2d Cir. 2015) .............................................................. 30

*Kronisch v. United States,*
150 F.3d 112 (2d Cir. 1998) ......................................................... 16, 18

*Lewis Tree Serv., Inc. v. Fire Dep't of New York,*
66 N.Y.2d 667 (1985) ........................................................................ 24

*Lindsey v. Normet,*
405 U.S. 56 (1972).............................................................................. 28

*Milan v. Wertheimer,*
808 F.3d 961 (2d Cir. 2015) .............................................................. 16

*Nicholas v. Tucker,*
114 F.3d 17 (2d Cir. 1997) ........................................................... 28, 29

*Ortwein v. Schwab,*
410 U.S. 656 (1973)........................................................................... 28

*Reed v. Goertz,*
143 S. Ct. 955 (2023)................................................................. *passim*

*Ret. Sys. v. MBIA, Inc.,*
637 F.3d 169 (2d Cir. 2011) .............................................................. 15

*Matter of Sahara Constr. Corp. v. N.Y.C. Office of Admin.*
*Trials & Hearings,*
185 A.D.3d 401 (N.Y. Sup. Ct. App. Div. 1st Dep't 2020) ................. 31

iii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Saharoof v. Stone,*
  638 F.2d 90 (9th Cir. 1980) .......................................................... 29, 30

*United States v. Kras,*
  409 U.S. 434 (1973), *superseded by statute* ........................................ 28

**Statutes**

42 U.S.C. § 1983 ............................................................ *passim*

NYC Admin. Code Code § 28-105.1.......................................................... 6

NYC Admin. Code Code § 28.201-1........................................................ 4, 7, 8

NYC Admin. Code Code § 28-204.4........................................................ 4, 7, 8

NYC Admin. Code § 28-219.1 ................................................................ 4

**Other Authorities**

1 RCNY § 102-01 ............................................................ 3

1 RCNY § 102-01(c)(2) ............................................................ 4

48 RCNY § 6-11(a) ............................................................ 4

48 RCNY § 6-11(d) ............................................................ 4

48 RCNY § 6-12(a) ............................................................ 4

48 RCNY § 6-17(a) ............................................................ 5

48 RCNY § 6-18 ............................................................ 5

48 RCNY § 6-19(a) ............................................................ 5, 17, 24

48 RCNY § 6-19(a)(1)(i) ............................................................ 5, 17

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

48 RCNY § 6-19(b) ................................................................5

48 RCNY § 6-19(g) ................................................................5

## PRELIMINARY STATEMENT

Without obtaining a permit, Joseph Corsini constructed an addition on the roof of two adjoining Queens properties out of combustible wood. Corsini claims the structure was meant to be a pigeon coop. Whatever its purpose, the structure was unlawful under the City's Construction Code. After the New York City Department of Buildings (DOB) discovered the unpermitted and hazardous structure, it issued Corsini notices of violations and ordered him to immediately remedy it. For months he refused. That refusal, too, was unlawful, and led DOB to issue additional notices of violations. And because the original violations were classified as immediately hazardous, DOB imposed additional penalties on Corsini when he failed to timely certify the hazardous condition had been remedied. All told, DOB issued Corsini eight notices of violation, two of which were dismissed without a hearing, and six of which were sustained after a hearing before an independent hearing officer.

More than three years after DOB issued the last notice of violation, Corsini sued the City under 42 U.S.C. § 1983. As relevant to this appeal, Corsini claims two denials of procedural due process. First, he claims that for two violations he was denied any review. Second, he claims that for

the other violations, although he was provided a hearing, his ability to administratively appeal was conditioned on his paying the penalty imposed. The district court dismissed these claims, and this Court should affirm.

Corsini's claim that he was denied any review on two of the violations is time-barred. DOB imposed these penalties in December 2016, but Corsini waited until November 2020 to sue, well outside the three-year statute of limitations. At the very latest, Corsini's claim accrued in January or February 2017—still well more than three years before he sued—when it became abundantly clear that all state proceedings regarding the December 2016 notices of violation were concluded. Contrary to Corsini's arguments, the accrual date is unaffected by later proceedings relating to *other* notices of violation.

Corsini's other claim on appeal—challenging the fact that his ability to administratively appeal was conditioned on his paying the penalty imposed—fails on the merits. It is well settled that requiring a party to pay a penalty while an appeal is pending does not violate due process, especially when, as here, the requirement allows for waiver if the party shows that it cannot pay.

## ISSUES PRESENTED FOR REVIEW

1. Did the district court correctly dismiss Corsini's § 1983 claim against the City where his claim that he was denied review of two violations occurred outside the statute of limitations period?

2. Did the district court correctly dismiss Corsini's § 1983 claim against the City where his claim that the requirement that he pay the imposed penalty as a condition of pursuing an administrative appeal violates his due process rights is foreclosed by well-settled precedent?

## STATEMENT OF THE CASE

### A. The process for issuance and adjudication of violations of the City's Construction Code

When DOB discovers a violation of the Construction Code, it issues a notice of violation to the violating party. Each notice has a unique violation number (*see, e.g.,* Appendix ("A")130, 132). The notice identifies the law that is being violated as well as the violation's classification (*id.*). There are three possible classifications: (1) immediately hazardous or "Class 1"; (2) major violations or "Class 2"; and (3) lesser violations or "Class 3." 1 RCNY § 102-01.

Every notice contains an order directing the party to remedy the violation and, once it is remedied, to file a certification of correction with

3

DOB. 1 RCNY § 102-01(c)(2). A party's failure to comply with that order to correct constitutes a separate violation, *see* NYC Admin. Code §§ 28-201.1, 28-204.4, and can lead to additional notices of violations. Additionally, for Class 1 violations, since they pose imminent danger to public safety, a failure to timely certify correction leads to issuance of another penalty of not less than $1,500. NYC Admin. Code § 28-219.1.

For each notice of violation, a respondent is entitled to a hearing before an independent hearing officer of the Office of Administrative Trials and Hearings ("OATH"). 48 RCNY § 6-11(a). As the notice explains, the hearing is the party's opportunity to defend against the allegations set forth in the summons, which includes the classification of the violation (A130).

DOB bears the burden of proving the violation. 48 RCNY § 6-12(a). At the hearing, the respondent can be represented by a lawyer, present evidence, question witnesses, make factual and legal arguments, and make motions or objections necessary to ensure due process and a fair and impartial hearing. 48 RCNY § 6-11(d). After the hearing, the hearing officer issues a written decision, which constitutes a final decision unless

it is appealed. 48 RCNY § 6-17(a). Any penalties imposed by the decision must be paid within 30 days of the date of the decision. 48 RCNY § 6-18.

Either party can administratively appeal a hearing officer's decision within 30 days of the decision. 48 RCNY § 6-19(a)(1).[1] Generally, a respondent must pay any penalty imposed by the hearing officer's decision as a precondition to appealing. 48 RCNY § 6-19(a)(1)(iii). There are, however, exceptions to this rule, one of which is for financial hardship. 48 RCNY § 6-19(b). Rather than paying the penalty, a respondent can attach to their appeal a waiver application along with evidence that paying the penalty would work a financial hardship. 48 RCNY § 6-19(b). If the Chief Administrative Law Judge grants a waiver, the appeal will proceed. If they deny the waiver, the respondent can still proceed with the appeal if they pay the penalty. *Id.*

If the respondent chooses to administratively appeal and prevails, the Appeals Unit will order DOB to repay any penalties they have paid. 48 RCNY § 6-19(g)(2). If they lose, they are still not out of luck; they can obtain further review in a court by way of an Article 78 proceeding. *Id.*

---

[1] A party has 30 days from the date the decision is issued in which to appeal, unless the decision was mailed, in which case they have 35 days to appeal. 48 RCNY § 6-19(a)(1)(i).

**B. The issuance and adjudication of notices of violations to Corsini for building an unpermitted and dangerous roof structure**

This case arises from Corsini's construction of an unpermitted structure on the roof of his Queens home, his refusal to remedy the condition, and the violations that the City imposed as a result. Corsini claims DOB issued two different types of violations—unreviewable violations and reviewable violations. Except where noted, the following is taken from Corsini's allegations in his second amended complaint.

**1. OATH's January 2017 decisions, sustaining violations for the unpermitted structure and Corsini's subsequent failure to correct**

In 2016, without first obtaining a permit, Corsini built an addition on the roof of two adjoining properties using combustible wood (A111, 130, 134-35). In September 2016, after neighbors complained, DOB visited the site and issued Corsini two notices of violation—each with a unique violation number—for work without a permit in violation of NYC Administrative Code § 28-105.1 (A130-34).[2] Because Corsini used

_____

[2] The DOB issued two violations because the coop spanned two separate addresses (A130, 132).

6

combustible materials to construct the addition, the DOB inspector classified the violations as immediately hazardous or Class 1 (A130, 132).

The notices ordered Corsini to remedy the violation by either obtaining a permit or restoring the premises to their prior legal condition by taking down the addition (A130, 132). They also explained that, once Corsini corrected the violations, he had to file a certificate of correction and that his failure to do so could lead to additional penalties (A130, 132). The notices set a mandatory hearing for November 15, 2016 (A130, 132), which was later adjourned to January 2017 (A137-38).

In November 2016, Corsini had not taken down the coop or obtained a work permit, so DOB issued him notices of violation for failing to correct, a violation of NYC Administrative Code §§ 28.201-1 and 28-204.4 (A140-43). The notices set a mandatory hearing for January 2017 (A140, 142).

In December 2016, DOB issued Corsini two civil penalties—what Corsini labels as the "unreviewable violations"—for failing to certify correction of the September 2016 Class 1 violations (A158-61). Each December 2016 notice explicitly referred to the unique violation number of the two September violations (A158 (relating to violation at A130), 160

7

(relating to violation at A132)). Corsini alleges that it was his understanding that these penalties would be adjudicated at the OATH hearing for the September violations (A113).

In January 2017 a consolidated hearing was held on the September and November violations (A137-38, 145-46). Corsini was represented by an attorney (A114). As to the September violations, Corsini's attorney did not contest that Corsini did not obtain a permit before construction of the addition, nor did he contest the DOB inspector's classification of the violation as Class 1 (A137-38). Despite Corsini not contesting the Class 1 immediately hazardous classification, DOB's representative moved to downgrade the classification to Class 2 (A137-38).

As to the November failure-to-comply violations, Corsini did not contest that he had not corrected the September violations and had not certified correction when the violations were issued (A145-46). Indeed, his attorney conceded that, even as of the date of the hearing, the violation still existed, though he asserted that Corsini was trying to correct it (*id.*). As it did with the September violations, DOB's representative moved to amend the classification to a Class 2 (*id.*).

8

The hearing officer issued four written decisions (one for each notice), sustaining each violation but downgrading them to Class 2 (A137-38, 145-46). For each violation, the officer imposed the "standard" penalty of $800 for Class 2 violations for work without a permit and failure to correct (A113).

Corsini knew that he could administratively appeal each decision, but he alleges that he chose not to do so for two reasons (A116). First, he claims he was worried that he could get an even less favorable decision, including potentially having the violations reclassified back to Class 1, which would have doubled the penalty for each violation (A116).[3] Second, he claims he did not want to have to pay the $800 penalty before pursuing his appeal (A116), as OATH's rules required absent an applicable exception. Although he knew that he could apply for a financial hardship exception to allow him to forgo paying the penalty while his appeal was pending, he did not do so (A116). He thought it would have been a waste

---

[3] Given that the hearing officer amended the violations down to Class 2 based on an unopposed motion made by DOB, and not Corsini, it is hard to see how that decision could be reversed on administrative appeal. DOB obviously could not contest the hearing officer's grant of its own motion. Corsini obviously wouldn't raise it himself. And the Appeals Unit would not, sua sponte, question the hearing officer's granting of an unopposed motion.

9

of his time and money to seek that exemption (even though the application is free) (A116).

After the time for Corsini to administratively appeal expired in February 2017, the hearing officer's decision became a final determination. Neither the hearing officer's findings nor the penalty could not be challenged in a future hearing on a different violation.

### 2. OATH's March and November 2017 decisions, sustaining additional violations for failing to correct the unpermitted structure

Despite Corsini stating at the January 2017 hearing that he was trying to correct the underlying violation, it remained in existence in February 2017. DOB thus issued him a further notice of violation for failing to correct (A148). A hearing was held in March 2017, at which Corsini was again represented by an attorney (A154). In support of the violation, DOB submitted a BIS printout showing no record of compliance with the sustained violation had been recorded (A154). Corsini's attorney denied the amended violation, but presented no argument or evidence on the merits and offered no proof in mitigation (A154).

In a written decision, dated March 31, 2017, the hearing officer sustained the amended violation and imposed the statutory Class 2

penalty of $800 (A154). Corsini chose not to administratively appeal for the same reasons that he did not appeal the other four decisions (A116). Thus, in the April 2017, 30 days after the hearing officer issued their fifth written decision, that decision became a final and binding determination, and the proceedings relating to the February 2017 violations were complete.

In April 2017, Corsini still had not corrected the September violations, so DOB issued him another notice of violation for failing to correct (A151-52). After a hearing, at which Corsini was represented by an attorney, the hearing officer issued a written decision, dated November 21, 2017, sustaining the Class 2 violation and imposing the statutory penalty of $800 (A156).

Once again, Corsini chose not to administratively appeal for the same reasons he did not appeal the other five decisions (A116). He also failed to timely pay the penalty (A115).

## C. The district court's dismissal of Corsini's action, brought more than three years after the December 2016 notices of violation

In November 2020 Corsini sued the City (A7-28). In an amended complaint Corsini asserted a claim under 42 U.S.C. § 1983 against the

11

City for depriving him of his Fourteenth Amendment procedural due process rights (A61-64). As is relevant to this appeal, Corsini claimed that the process the City used to adjudicate the 2016 DOB penalties was unconstitutional because it provided him no avenue to contest the penalties. He also claimed that the City had denied him due process by conditioning his ability to administratively appeal the hearing officer's decision on his paying the penalty imposed.

The City moved to dismiss the amended complaint, *see* ECF No. 31, which the district court granted, finding Corsini's claim was barred by the statute of limitations (A90). The district court held that Corsini's claim accrued in September and November 2016, when DOB issued the first two sets of notices of violation (A89-90). The court rejected Corsini's contention that each day that the City failed to provide him with a hearing for the so-called unreviewable violations issued in December 2016, represented a continuing violation that rendered his due process claim timely (A91-92).

The district court also dismissed Corsini's claim that conditioning his ability to administratively appeal the hearing officer's decision on his payment of the penalties violated his due process rights, finding it

12

foreclosed by precedent (A90 n.14). The court, however, allowed Corsini to amend his complaint (for a second time) to try to allege a due process violation that occurred within the limitations period (A94).

Corsini filed a second amended complaint with additional allegations trying to establish that the continuing violation doctrine applied. According to Corsini's new allegations, the administrative adjudication process started on January 13, 2017, when a hearing officer sustained the September work-without-a-permit violations, and ended on November 21, 2017, when a different hearing officer sustained the April 2017 failure-to-comply violation (A115). It was on November 21, 2017, Corsini alleges, that all proceedings had concluded (A115). At the point, Corsini claims, he realized for the first time that he would not receive hearings on the December 2016 Class 1 penalties (A115).

The district court disagreed. In granting the City's second motion to dismiss, the court held that Corsini's claims based on the December 2016 Class 1 violations accrued at the latest in January 2017, after the hearing officer had adjudicated the September 2016 violations that prompted the December 2016 penalties (A234). The court rejected Corsini's arguments for applying the continuing violation doctrine, which

applies to claims composed of a series of separate acts that *collectively* constitute one unlawful practice (A235). The court held that each notice of violation was a discrete act that Corsini had a separate claim for, each with its own limitations period (A235). Finally, the court held that the fact that the City still had not given him a hearing on the December 2016 penalties did not make the penalties a continuing violation (A235-36). If this were correct, the court explained, the statute of limitations for a procedural due process would never expire because every day that a plaintiff did not receive the particular form of due process he desired would constitute a continuing violation (A236).

As for his due process claims related to the other violations, the court held that the claim based on the violation imposed in November 2017 was timely, but still failed on the merits (A236).

## SUMMARY OF ARGUMENT

On appeal, Corsini challenges only the dismissal of two claims—(1) his claim based on the denial of a hearing for the December 2016 violations; and (2) his claim based on the City's requirement that Corsini pay any penalties imposed pending an administrative appeal. This Court reviews the dismissal of a complaint, including its interpretation and

application of a statute of limitations, de novo. *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). Applying this standard of review, this Court should affirm.

Corsini's claim based on the alleged denial of review of the December 2016 violations is time-barred. As the district court correctly held, this claim accrued in December 2016, when Corsini was denied review of the violations, or at the latest, in January 2017, after the hearing on the underlying violations was held. Corsini did not file his complaint until November 2020, almost a year after the three-year statute of limitation had run on his claim.

Corsini's claim based on the City's requirement that he pay the penalties imposed by the hearing officer in order to administratively appeal is foreclosed by longstanding precedent. It is well settled that the requirement that a fine be paid before taking an administrative appeal is constitutional.

## ARGUMENT

### POINT I

### THE STATUTE OF LIMITATIONS BARS CORSINI'S DUE PROCESS CLAIM BASED ON THE DENIAL OF REVIEW OF THE DECEMBER 2016 VIOLATIONS

**A. Corsini's claim accrued in December 2016 or, at the latest, in February 2017, outside the limitations period.**

The statute of limitations applicable to Corsini's § 1983 claim is three years, *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015), and it begins to run when the plaintiff has a "complete and present cause of action," *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023). Where the government has concealed relevant facts or the party would not reasonably know of those facts, accrual occurs when the plaintiff has—or with reasonable diligence should have—discovered the injury. *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998). For a procedural due process claim, a plaintiff's injury occurs when process is denied because the provision of insufficient process is an injury in itself. *Reed*, 143 S. Ct. at 961. Thus, the claim accrues when the process they allege they were entitled to was denied or, at the latest, when the plaintiff knew or should have known it was denied. *Id.* Under either standard, Corsini's procedural due process

16

claims based on the alleged denial of review for the December 2016 notices of violation accrued when they were issued, in January 2017, when the hearing on the prior violations concluded, or, at the absolute latest, in February 2017, when the time to appeal that outcome ran. Regardless of which date is used, his claim is untimely.

Corsini claims that due process requires that he be provided a hearing to contest the December 2016 violations (Brief for Appellant ("App. Br.") 24). His injury thus occurred when he was allegedly denied that process on December 14, 2016, when DOB imposed the penalties on him without a hearing.[4] By Corsini's own allegations he knew at that time that had been denied process. Specifically, Corsini alleged that the DOB imposed an automatic penalty that was unreviewable; according to

---

[4] In the district court, we explained that, while a party who receives a DOB penalty for failing to certify correction of a Class 1 violation is not entitled to a separate hearing, they can effectively contest the validity of the penalty at the hearing on the underlying violation by contesting that violation or its classification (A172). Indeed, we pointed out that, in this case, Corsini's failure-to-correct penalties were dismissed after the hearing officer's decision downgraded the underlying violations to Class 2 (*id*.). Nonetheless, as the district court pointed out, Corsini alleged that the December 2016 violations were unreviewable through an OATH hearing or any other administrative process and, since this case is at the motion to dismiss stage, we must assume the truth of Corsini's allegations (A232). Therefore, for the purposes of this appeal only, we assume that Corsini was not entitled to any review of the December 2016 violations.

Corsini, once the penalty was issued the only option he had was to pay the penalty (A101).

But even if he did not know, he should have known. According to Corsini, the December 2016 notices make clear that the only way to resolve the violation was for him to pay the civil penalty (A100-01, 158-61). And, unlike the other notices of violations that Corsini received, which set forth a mandatory hearing date, these notices provided no hearing date and, indeed, did not mention a hearing (*id.*). Again, Corsini understood this silence to mean that there is no mechanism for him to challenge these penalties even if "any related reviewable violations have been found to be invalid or withdrawn by the City" (A101). Taken together, this was enough for a person of reasonable intellect to be alerted that he is being denied a hearing. As this Court has held, a party need only have "enough of the critical facts" to "protect himself by seeking legal advice." *Kronisch*, 150 F.3d at 121. On Corsini's own theory, the violations were clearly sufficient to suggest to Corsini that he could seek legal advice, and thus started the clock on his due-process claims.

Even if this Court finds that Corsini could not or should not have reasonably known that he had been denied process on December 14,

2016, he should have known by the end of January 2017, after the hearing was held on the underlying violations. The December violations were issued as a result of his failure to correct the September violations and the two sets of violations were thus interrelated.

Indeed, it was the September violations' classification as Class 1, which mandated immediate correction, that triggered the December violations. And the December violations conveyed as much. They expressly stated that they were related to the reviewable violations that DOB had issued to Corsini in September 2016 (A158, 160; *see also* App. Br. 15 (conceding that the violations were described "related"). They each referred to the same unique identifying number assigned to each earlier, reviewable violation (*compar*e A130-32 *with* A158, 160). And they explained that they were based on the September 2016 violations classification as Class 1 (A158, 160). Thus, a reasonable layperson might have believed, as Corsini claims he did (*see* A113), that they could contest the December violations at the hearing for the September violations. But once the hearing on the September violations was over, it would have been crystal clear that Corsini would not get another bite at the apple at some unspecified later hearing unrelated to the either the September or

December violations. So, once the January 2017 hearing concluded, whatever due-process injury he had relating to any alleged failure to provide process for those violations accrued. Further giving Corsini the benefit of the doubt, his claim accrued at the absolute latest in February 2017, when he declined to appeal the hearing officer's determinations and proceedings relating to them were thus clearly concluded.

Because Corsini's procedural due process claims based on the unreviewable nature of the December 2016 violations accrued at the latest in the end of January or February 2017, he had at the latest until January or February 2020 to file suit. Because he did not file suit until almost a year later—in November 2020—his claims relating to those violations are time-barred.

### B. Corsini's arguments on appeal misunderstand the Supreme Court's decision in *Reed v. Goertz.*

On appeal, Corsini wisely abandons his argument that the continuing violation doctrine applies and shifts to a new argument. He claims that under the Supreme Court's decision in *Reed v. Goertz*, 143 S. Ct. 955 (2023), his claims are timely (App. Br. 27-32). At the outset, he leads off by quibbling with the district court's *first* decision dismissing

his first amended complaint on the basis that the statute of limitations accrues "'when the notice of violation is issued, not upon final disposition of the matter'" (App. Br. 26 (quoting A93)). But that is *not* the decision on appeal. In the district court's second decision—the one actually on appeal—the court accepted Corsini's framing, applied *Reed*, and took as true his allegation that "the City did not provide any further process" once the December 2016 notices of violation were issued (A233). Thus, any claim arising from them nonetheless accrued immediately because, when it issued the violations, the City had given Corsini all the process that it was going to offer as to those violations under his theory of the case and there was a "final disposition of the matter" (A233).

Corsini's own description of the law dooms his claim. As he argues, his due process claim "accrues when the government concludes the procedures associated with *that violation* without hav[ing] provided sufficient process" (App. Br 28 (emphasis added)). But here, "that violation," is the December 2016 violation, and the City "conclude[d] the procedures" associated with that violation when it was issued or, at the latest, in January or February 2017. The fact that the City issued

21

*additional* violations later has nothing to do with when the procedures associated with the December 2016 violation were concluded.

Departing from that accurate description of *Reed*, Corsini pivots to an argument that the procedures associated with the December 2016 violations were not final until the conclusion of his final hearings on later-issued violations (App. Br. 32). According to Corsini, the proceedings "associated" with his December 2016 violations did not end until the hearing officer issued their decision on the April 2017 violation, or even later still when the City accepted Corsini's certificates of correction for the six additional violations issued in December 2017 and February 2018 (App. Br. 32). But Corsini misapplies *Reed*.

In *Reed*, the plaintiff contended that the state's process for considering his post-conviction DNA testing request was fundamentally unfair. *Id.* at 961. That process included not only trial court proceedings, but also appellate review, which encompassed a motion for rehearing. *Id.* Thus, the Court held that the plaintiff's denial of due process was not complete after the trial court denied his motion for DNA testing, but when the appellate court denied his motion for a rehearing. *Id.* It was only when the state litigation ended, the Court explained, that the denial

of process that the plaintiff complained of was complete. *Id.* Far from providing a blanket rule that all procedural due process claims accrue when some set of arguably related proceedings end, as Corsini contends (App. Br. 27-28), *Reed* teaches that accrual of a procedural due process claim is tied to the specific denial of process that the plaintiff complains of. *Id.* at 961.

Here, Corsini claims he Was denied review of the December 2016 violations. And according to Corsini's own theory, the denial of that process was complete on December 14, 2016—he consistently alleges that the day DOB issued the notices of violation was also the day the procedures associated with those violation concluded because the violations were unreviewable (A101). Or, at the latest, those proceedings concluded in January 2017, when the hearing at which the underlying violations to which the December violations were tethered.

Corsini insists that all the violations related to his unpermitted construction should be considered together and that his claim did not accrue until they were all adjudicated (App. Br. 32). But the relevant process is the process associated with a particular violation, not with the general subject matter of the violations, as even Corsini appears to agree

23

earlier in his brief (*see* App. Br. 28 (arguing claim accrues when process associated with a particular "violation" concludes)).

Indeed, the procedures surrounding the adjudication of violations make clear that each notice of violation has a separate and distinct process that comes to an end 30 days after the hearing officer's decision is issued (if, the losing party chooses not to appeal, as Corsini did here). Thus, once the decision was rendered in January 2017, Corsini had 30 days to appeal that decision. 48 RCNY § 6-19(a)(1). When he failed to do so, that decision became final and binding. Likewise, with the March and November 2017 decisions, he had the same 30 days to appeal (A154, 156). When he failed to do so, those decisions became final and binding.

Once a decision becomes final and binding, it cannot be challenged in a later proceeding. If, for example, Corsini had appealed from the November 2017 decision, he would not have been able to bring up for review the unappealed findings from the January 2017 decision. And had he filed an Article 78 proceeding in state court challenging the November decision, he likewise would not be able to use that as a vehicle to reach back and challenge the January determination. *See*, *e.g. Lewis Tree Serv., Inc. v. Fire Dep't of New York*, 66 N.Y.2d 667, 669 (1985) (holding that a

prior, unchallenged decision cannot be collaterally attacked in a later article 78 proceeding). Each violation is separate and any claim relating to that violation is adjudicated separately.

Corsini also claims that had he brought his § 1983 claim on December 14, 2016, the City would have argued that it was unripe because he was entitled to review at the January 2017 hearing, and, under *Reed,* the City would have been right (App. Br. 28). But if we accept Corsini's allegations as true—as we must at this stage—then the answer is that Corsini's claim was ripe on December 14, 2016, and the City would be wrong to argue otherwise. In any event, as we have shown, his claim would remain time-barred even if the January 2017 hearing (or month-later lapse of time to administratively appeal the hearing determination) were taken as the date of accrual.

Finally, Corsini unpersuasively argues that any conclusion that his claim accrued on December 14, 2016, disregards what would happen if he had been forced to simultaneously litigate his federal § 1983 claim while the City proceedings regarding the December 2016 violations were still ongoing (App. Br. 29-30). But the whole basis for finding that Corsini's claim accrued on December 14, 2016, is his allegation that the

December 2016 violations were unreviewable and thus the proceedings regarding the December 2016 violations began and ended on December 14, 2016, when DOB issued the notices of violation (A100-01, 114-15, 118).

Thus, assuming the truth of Corsini's allegations, there could be no simultaneous City and federal proceedings regarding the December 2016 violations. This does not present the situation that *Reed* cautioned against, where "the plaintiff would likely continue to pursue relief in the state system and simultaneously file a protective federal § 1983 suit challenging that ongoing state process." *Reed*, 143 S. Ct. at 962. According to Corsini, there was no relief to be pursued in the administrative system. And the fact that Corsini's federal § 1983 claim based on the December 2016 violations might be litigated while the administrative proceedings on other, separate violations were going on would not offend principles of consistency and judicial economy, as Corsini claims (App. Br. 29-30), since the proceedings relate to distinct violations.

Under a proper application of *Reed*, Corsini's due process claims based on the allegedly unreviewable nature of the December 2016

violations accrued on December 14, 2016, the day the City allegedly denied him review. Corsini knew or should have known that he had been denied this process on December 14, 2016, or at the latest, the end of January or February 2017. Because his complaint followed more than three years later, his claims are time-barred.

## POINT II

**CORSINI'S DUE PROCESS CLAIM CHALLENGING THE CITY'S REQUIREMENT THAT HE PAY THE FEES IMPOSED BY THE HEARING OFFICER TO APPEAL FAILS TO STATE A CLAIM**

Corsini's remaining due process claim—challenging the City's rule requiring a party to pay the penalty imposed pending an appeal—fails on the merits to the extent it is timely.[5] The Supreme Court has long recognized that conditioning a party's appeal in a civil case on their ability to pay a fee does not offend due process, except in a narrow class of cases involving certain fundamental rights that are not implicated by

---

[5] For this claim, Corsini's time began to run when the hearing officer issued their decisions sustaining each of the violations and his time to appeal began to run. For the September and November 2016 violations that occurred in January 2017 (A145-46). For the February 2017 violations, that occurred in March 2017 (A154). And for the March 2017 violations, that occurred in November 2017 (A156). The only timely claim is the claim based on the March 2017 violations.

27

here. *See United States v. Kras*, 409 U.S. 434, 445 (1973), *superseded by statute* Pub. L. 103-121 (1994); *Ortwein v. Schwab*, 410 U.S. 656, 659 (1973). Indeed, the Supreme Court specifically explained that it is proper to require an appellant to "post adequate security before an appeal … to guard a damage award already made." *Lindsey v. Normet*, 405 U.S. 56, 77 (1972). If the government can constitutionally require an appellant to post security to guard a damage award made, it can likewise require posting security to guard a fine imposed. Applying this principle, this Court has also concluded that conditioning a party's ability to file an appeal on payment of a fee does not violate due process where they are given the ability to seek a waiver if they cannot afford to pay. *Nicholas v. Tucker*, 114 F.3d 17, 19-20 (2d Cir. 1997).

Corsini's claim falls squarely within the holdings of *Lindsey* and *Nicholas*. Contrary to Corsini's suggestions, he did not have to pay his fines as a condition of receiving a hearing from a neutral tribunal—OATH. And although the general rule is that parties must post their fines as a condition of pursuing an administrative appeal, that rule is subject to exceptions, including for hardship. Corsini could have, but did not, seek a waiver. Nor did Corsini deny that he could pay the fee. Rather, he

claims that he has limited funds so payment of the penalty will cause him "financial pain" (A115-16). But, this Court in *Nicholas*, rejected this very argument, explaining that requiring a party "to make economic decisions about filing lawsuits does not deny access to the courts." *Id.*

On appeal, Corsini argues that the district court, in dismissing this claim, relied on cases upholding the constitutionality of a bond, which he claims is not the same thing as the City's requirement because a bond does not require payment, only a promise to pay (App. Br. 36-37). But his description of the caselaw is incorrect. In *Saharoof v. Stone*, 638 F.2d 90 (9th Cir. 1980), one of the cases the district court relied on, the bond at issue required the plaintiff to pay—not promise to pay—twice the award imposed against him in cash to appeal. *Id.* at And, although the plaintiff in *Saharoof*, unlike Corsini, could not pay, the court still found the requirement constitutional. *Id.* at 92. The court explained that the requirement did not deny the plaintiff an opportunity to be heard; he had an opportunity to present his case in an adversary proceeding before an administrative law judge. *Id.*

Corsini also wrongly argues that the district court erred in relying on cases holding that the posting of an appeal bond is constitutional,

because appeal bonds simply ensure payment of the costs on appeal, which is different from a "full-payment condition" (App. Br. 37). But he conflates "cost bonds" and "supersedeas bonds," both of which are constitutional. A court can impose a cost bond, which is "prospective," and secures the costs relating to the appeal only, but it may also impose a "supersedeas bond," which prospectively covers all "sums related to the merits of the underlying judgment." *Adsani v. Miller*, 139 F.3d 67, 70 n.2 (2d Cir. 1998); *see also Augustin v. Nassau County Sheriff's Dep't*, 783 F.3d 414, 417 (2d Cir. 2015) (explaining that the purpose of the bond is to "ensure that the prevailing party will recover in full, if the decision should be affirmed" (quotation marks omitted)). As discussed above, in *Saharoof*, the court did just that, holding that statutory bonds requiring payment of "double the amount of the reparation awarded" before an appeal may be pursued are constitutional. 638 F.2d at 91.

Corsini's citation of cases whether there is no procedure for judicial review (App. Br. 39) is beside the point, because here, as he concedes, his claim is reviewable in court through an article 78 proceeding. And the state trial court decision on which he relies in fact took no issue with the applicability of the rule requiring a violator to pay "fines" or "penalties"

before invoking the administrative appeals process which, like the fees here, were waivable on a showing of financial hardship—indeed, the petitioner there obtained a financial hardship waiver. *Matter of Sahara Constr. Corp. v. N.Y.C. Office of Admin. Trials & Hearings*, 185 A.D.3d 401, 401 (N.Y. Sup. Ct. App. Div. 1st Dep't 2020). Instead, the court was concerned with a separate requirement that the party make full payment of "restitution" to an aggrieved third party before an appeal could be taken, which the agency was "not permitted to waive." *Id.* at 401-02.

Corsini has had an opportunity to present his case in an adversary proceeding before an independent hearing officer. He also had an opportunity to administratively appeal that decision and later seek judicial review. That he chose not to do so because he did not want to pay the fine pending appeal—or even apply for an exemption—does not make the procedures the City provided constitutionally infirm.

31

## CONCLUSION

This Court should affirm the district court's dismissal of Corsini's claim against the City.

Dated:  New York, NY
October 31, 2023

Respectfully submitted,

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellee

/s/ Antonella Karlin

By: _____

ANTONELLA KARLIN
Assistant Corporation Counsel

100 Church Street
New York, NY 10007
212-356-0820
akarlin@law.nyc.gov

RICHARD DEARING
JAMISON DAVIES
ANTONELLA KARLIN
   *of Counsel*

32

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,771 words, not including the table of contents, table of authorities, this certificate, and the cover.

/s/ Antonella Karlin

ANTONELLA KARLIN